IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

THOMASENA MITCHELL,

      Appellant,

v.

MIAMI DADE COUNTY AKA
MDPD
(INTRACOASTAL)/MIAMI
DADE COUNTY RISK
MANAGEMENT,

      Appellees.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-2153

_____/

Opinion filed February 23, 2016.

An appeal from an order of the Judge of Compensation Claims.
Edward Ramos Almeyda, Judge.

Date of Accident: January 27, 2013.

Wendy S. Loquasto, Fox & Loquasto, P.A., Tallahassee, and Paolo Longo, Jr.,
Bichler, Kelley, Oliver & Longo, PLLC, Maitland, for Appellant.

R.A. Cuevas, Jr., County Attorney, and Daron S. Fitch, Assistant County Attorney,
Miami, for Appellees.


PER CURIAM.

      This workers' compensation case makes its second appearance before this

Court.  We find no error in the Judge of Compensation Claims' (JCC's) considering

on remand the testimony of both Drs. Borzak and Pianko. The JCC nevertheless erred in his analysis regarding the effect of the medical testimony as to what "triggered" – or made symptomatic – Claimant's congenital slow accessory pathway[1] which manifested as supra ventricular tachycardia (SVT).[2]

## Mitchell I

Previously, the Employer challenged the JCC's determination that it had not defeated the presumption of occupational causation to which the parties agreed Claimant, a law enforcement officer, was entitled under paragraph 112.18(1)(a), Florida Statutes (2012). See Miami-Dade Cty. v. Mitchell (Mitchell I), 159 So. 3d 172 (Fla 1st DCA 2015). This Court agreed that the JCC ignored or overlooked parts of the medical opinion testimony when he concluded that Claimant's slow accessory pathway was not a congenital condition. Id. We reversed and remanded "to the JCC for consideration of the medical evidence in its entirety." Id. at 174.

## Result on Remand

At the remand hearing, no new evidence was submitted. The parties were afforded the opportunity to direct the JCC to those portions of the doctors' depositions that they believed supported their respective positions regarding Claimant's entitlement to benefits.

---

[1] Dr. Pianko testified that this congenital defect is a mild abnormality of the heart's electrical wiring.

[2] Dr. Pianko also testified that SVT is a very rapid, abnormal heart beat.

2

After reviewing the medical testimony of Dr. Borzak, Claimant's independent medical examiner, and Dr. Pianko, the physician authorized by the Employer to provide treatment while it investigated the compensability of the claim, the JCC reversed his previous conclusion that the slow accessory pathway was not a congenital condition. The JCC next turned to the "second" part of the test to determine whether the Employer successfully rebutted the occupational causation presumption – the "trigger" that he explained made the abnormal wiring cause the SVT. On this question, the JCC found there was no conflict in the opinions of the two physicians – both agreed that the cause was unknown. Possible triggers were named – caffeine, stress, low potassium, blockage of the heart – but the JCC concluded that in this case there was no answer to the question.

The JCC noted that it was the Employer's burden to prove a non-occupational cause of the SVT by competent evidence. He found "that a non occupational underlying medical condition, the slow pathway-AV node, was the root of the ultimate SVT, which had a trigger of unspecific etiology." Because the SVT would not have occurred but for the existence of the congenital slow pathway, the JCC concluded that the SVT "must also be found to be a product of the underlying congenital, non occupation[al] condition." Accordingly, the JCC found Claimant's claim not compensable.

## Scope of Remand

3

Claimant first challenges the JCC's scope of remand, arguing that he exceeded this Court's directions. We review de novo the precise scope of the remand; specifically, whether the JCC had the authority to make the findings that he did. See Jacobsen v. Ross Stores, 882 So. 2d 431, 432 (Fla. 1st DCA 2004). Here, the instructions to the JCC were to consider "the medical evidence in its entirety." The medical evidence included the depositions of Drs. Borzak and Pianko, which was the evidence considered by the JCC. Thus, the JCC did not exceed the scope of the remand.

## Nature of the Presumption

Central to this matter, and to the JCC's error, is an understanding of the nature of the presumption afforded Claimant under section 112.18 and how it is applied to the facts in this case. Section 90.302, Florida Statutes, describes two types of presumptions – presumptions affecting the burden of producing evidence and presumptions affecting the burden of proof. Presumptions affecting the burden of producing evidence are often described as "bursting bubble" presumptions because they vanish once evidence rebutting them is introduced. See Universal Ins. Co. of N. Am. v. Warfel, 82 So. 3d 47, 54 (Fla. 2012). See also Punsky v. Clay Cty. Sheriff's Office, 18 So. 3d 577, 581 (Fla. 1st DCA 2009) (en banc). Section 90.303, Florida Statutes, explains that presumptions intended to facilitate the finding that a particular action occurred, as opposed to implementing public policy, are

4

presumptions affecting the production of evidence. Section 90.304, Florida Statutes, provides "[i]n civil actions, all rebuttable presumptions which are not defined in section 90.303 are presumptions affecting the burden of proof." As recognized in Punsky, this latter type is the nature of the presumption provided by section 112.18. Id.

In Warfel, the supreme court explained the mechanics of each presumption:

> In *Department of Agriculture & Consumer Services v. Bonanno*, 568 So. 2d 24 (Fla. 1990), this Court articulated the difference between the two types of presumptions as defined by the Florida Evidence Code. With regard to 90.303 presumptions, this Court stated that '[t]his type of presumption is commonly referred to as a vanishing presumption, or a 'bursting bubble' presumption. Once evidence rebutting the presumption is introduced, *the presumption disappears and the jury is not told of it."* Id. at 31 (emphasis supplied). With regard to the presumption articulated in section 90.304, this Court stated:
>
>> When a presumption shifts the burden of proof, the presumption remains in effect even after evidence rebutting the presumption has been introduced and *the jury must decide if the evidence is sufficient to overcome the presumption. Public Health Trust v. Valcin*, 507 So. 2d 596 (Fla. 1987). *Presumptions which shift the burden of proof in civil proceedings are primarily expressions of social policy. Id.* at 601; *Caldwell v. Division of Retirement*, 372 So. 2d 438, 440 (Fla. 1979); C. Ehrhardt, *Florida Evidence* 68-79 (2d ed. 1984) (e.g., presumptions of the validity of marriage, sanity in civil cases, legitimacy of a child born in wedlock, the correctness of judgments).
>
> *Id.* at 31-32 (emphasis supplied).

82 So. 3d at 54. When applied to workers' compensation proceedings, the presumption, even if <u>rebutted</u>, does not disappear; rather, the JCC is then charged with deciding whether the evidence is sufficient to <u>overcome</u> the presumption.

Application of the Presumption

Here, with the evidence that the slow accessory pathway was a congenital abnormality, the Employer rebutted the presumption that Claimant's SVT was occupationally caused. Were there no other facts to consider, the JCC would weigh this evidence and, if convinced by it, conclude that this evidence also serves to overcome the presumption. The complicating factor here is the existence of evidence that the slow accessory pathway is "triggered" by something that brings on the SVT. The JCC erroneously concluded that simply because the slow accessory pathway was congenital, he was required to find that the "trigger" was also congenital. Rather, he was required to consider the evidence and determine whether the Employer overcame the presumption by establishing by competent evidence that the trigger was also non-occupational.[3]

Much like a pre-existing condition, this court has recognized a congenital condition can be aggravated. <u>See</u> <u>City of Temple Terrace v. Bailey</u>, 481 So. 2d 49, 51 (Fla. 1st DCA 1985). The evidence necessary to overcome the presumption must

---

[3] The Employer's burden was to submit competent evidence to rebut the presumption because Claimant relied solely on the section 112.18 presumption to establish compensability. <u>See</u> <u>Punsky</u>, 18 So. 3d at 583-84.

6

be medical evidence.  See Fuller v. Okaloosa Corr. Inst., 22 So. 3d 803, 806 (Fla. 1st DCA 2009).  It is not necessary for the employer to identify a single non-occupational cause in order to overcome the presumption.  See Punsky, 18 So. 3d at 584.  If the expert medical testimony establishes, for instance, that there are one or more possible non-occupational causes for the trigger, or there are no known occupational causes, this testimony, if accepted by the JCC, could overcome the presumption.  On the other hand, if the JCC declines to accept this contrary evidence, then the presumption will support a ruling in favor of the claimant.  Id. at 585.

## Conclusion

Here, the JCC made no findings regarding whether any potential trigger or triggers for the SVT were occupational; rather, he erroneously concluded that, because the underlying slow accessory pathway was congenital (non-occupational), so too was the trigger.  Based on the foregoing, we once again REVERSE and REMAND for further proceedings, which, in the JCC's discretion, may include reopening of the medical evidence to address the trigger issue.

ROWE, RAY, and SWANSON, JJ., CONCUR.